**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOSE ANTONIO VALDEZ-VILLALOBOS,** | ) | |
| **ID # 53845-177,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:20-CV-3476-D-BH** |
| **vs.** | ) | **No. 3:16-CR-286-D(1)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on December 7, 2020 (doc. 5), should be **DENIED** with prejudice.

## I.    BACKGROUND

Jose Antonio Valdez-Villalobos (Movant) challenges his federal conviction and sentence in Cause No. 3:16-CR-286-D(1). The respondent is the United States of America (Government).

### A.    Conviction and Sentencing

After being charged by complaint with several others, Movant was charged in a three-count indictment with one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) and (b)(1)(B)) (Count Two). (*See* docs. 1, 239.)[2] He pled guilty to Count Two of the indictment on September 23, 2016, under a plea agreement. (*See* docs. 337, 392.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:16-CR-286-D(1).

guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 337 at 1.)[3] He agreed that he understood the nature and elements of the crime to which he was pleading guilty. (*See id.*) The plea agreement set out the minimum and maximum penalties for Count Two and stated that Movant had reviewed the federal sentencing guidelines with counsel, he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 2.) He understood that the Court had sole discretion to impose the sentence and affirmed that there were no guarantees or promises from anyone about what sentence the Court would impose. (*See id.* at 2, 4.) He had thoroughly reviewed all legal and factual aspects of the case with counsel and concluded that it was in his best interest to enter into the plea agreement, rather than to proceed to trial. (*See id.* at 5.) The guilty plea was freely and voluntarily made, and not the result of force or threats or of promises apart from those set forth in the plea agreement. (*See id.* at 4.) He waived his right to appeal his conviction and sentence and his right to contest the conviction and sentence in any collateral proceeding, except in the limited circumstances set out in the plea agreement. (*See id.* at 5.) In exchange, the Government agreed not to bring any additional charges against Movant based on the conduct underlying and related to his guilty plea, and to dismiss any remaining charges in the pending indictment after sentencing. (*See id.* at 3.)

Movant also agreed in his plea agreement that the factual resume he signed was true and would be submitted as evidence. (*See id.* at 1.) In the factual resume, he stipulated that beginning in or around September 2013, through on or about February 2, 2016, he and others conspired to

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. (*See* doc. 336 at 2.) He also stipulated that between April 9, 2014, and July 8, 2015, controlled purchases of 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine were made from him, either directly or coordinated with the assistance of others. (*See id.*)

At his re-arraignment on September 23, 2016, Movant acknowledged under oath, through an interpreter, that he understood the nature of the charge to which he was pleading guilty, the plea agreement, and the plea agreement supplement. (*See* doc. 860 at 6-7.) He also acknowledged that he understood the rights he was giving up by pleading guilty and that he was waiving his right to appeal except in very limited circumstances. (*See id.* at 8-10, 13-14.) He understood that by pleading guilty to Count Two, he was subjecting himself to penalties that included a mandatory minimum period of 5 years' imprisonment and a maximum period of 40 years' imprisonment. (*See id.* at 10.) He affirmed that he had discussed with his attorney how the sentencing guidelines worked; he understood that the guidelines were advisory, his counsel's professional opinion concerning what the guideline range might be was not a guarantee or promise, and his advisory guideline range would not be determined until after a presentence investigation report (PSR) was completed and the parties were given an opportunity to object to the facts in the PSR and the proposed guideline range. (*See id.* at 11-13.) He affirmed that no promise or assurance of any kind had been made to him to induce him to plead guilty other than those in the plea agreement and supplement, no one had made any specific prediction or promise to him about what his sentence would be, and he understood the Court alone would decide his sentence. (*See id.* at 7-8, 11.) He affirmed that he had carefully read and understood the factual resume, he committed each of the essential elements set forth in it, and the facts stipulated therein were true and correct. (*See id.* at

15-17.) He pled guilty to Count Two, and the Court found that his guilty plea was knowing and voluntary. (*See id.* at 15, 17.)

On November 28, 2016, the United States Probation Office (USPO) prepared a PSR in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 467-1 at ¶ 42.) The PSR determined that Movant was accountable for 35.01 kilograms of methamphetamine (actual) and ice, and 991.8 grams of cocaine sold to two individuals in March 2013, an offer to sell methamphetamine to a confidential human source (CHS) in February 2016, and multiple controlled drug purchases made by confidential informants (CI), CHSs, and undercover agents between March 2014 and January 2016. (*See id.* at ¶¶ 35-36.) The drug quantities were the marijuana equivalent of 700,398.36 kilograms for purposes of the guideline calculations. (*See id.* at ¶ 36.) Applying the drug quantity table under U.S.S.G. § 2D1.1(c)(1), the PSR calculated a base offense level of 38 because the offense involved at least 90,000 kilograms of marijuana equivalent or more. (*See id.* at ¶ 43.) Two levels each were added because Movant possessed a dangerous weapon, the methamphetamine was imported from Mexico, and he maintained a premises for the purposes of distributing methamphetamine. (*See id.* at ¶¶ 44-46.) Four levels were added for Movant's role as an organizer and leader of the criminal activity. (*See id.* at ¶ 48.) Three levels were deducted for acceptance of responsibility, which resulted in a total offense level of 45. (*See id.* at ¶¶ 50, 52-53.) Because the guidelines treat offense levels exceeding 43 as a level 43, it became his total offense level. (*See id.* at ¶ 54.) Based on a total offense level of 43 and a criminal history category of I, the resulting guideline imprisonment range was life. (*See id.* at ¶ 86.) The statutory maximum for the offense was 480 months' imprisonment, so it became the guideline imprisonment range. (*See id.*)

On January 6, 2017, Movant filed objections to the PSR, including to the drug quantity

amount for which he was held accountable and to the bases underlying the dangerous weapon, importation, and leadership role enhancements. (*See* doc. 522 at 1-5.) On February 7, 2017, the USPO submitted an addendum to the PSR, which supported the PSR as written as to Movant's objections to the drug quantity amount and enhancements that could have affected the calculation of the advisory guideline range.[4] (*See* doc. 570-1.)  Movant objected to the addendum on March 7, 2017, and reasserted his original objections. (*See* doc. 615.) On August 28, 2018, he filed *pro se* objections to the PSR, challenging the drug quantity amount attributed to him and the dangerous weapon, importation, drug premises, and leadership role enhancements. (*See* doc. 822.) On October 5, 2018, Movant's counsel filed supplemental objections to the PSR, which added argument. (*See* doc. 832.) On October 29, 2018, the Government responded to Movant's *pro se* objections and counsel's supplemental objections. (*See* doc. 833.)

At the sentencing hearing on November 2, 2018, the Court heard testimony and arguments regarding the drug quantity amounts attributed to Movant and each of the sentencing enhancements applied in the PSR. (*See* doc. 861 at 5-72.) It overruled Movant's objection to the base offense level because the base offense level remained unchanged even after not including the drug quantity set forth in paragraph 25 of the PSR and 15 kilograms of methamphetamine from before the charged start date of the offense. (*See id.* at 74.) It overruled his objections to the importation, maintaining a premises, leadership role enhancements. (*See id.* at 74-76.) Regarding the dangerous weapon enhancement, the Court ruled that it need not decide the issue because the total offense level would be 43 regardless of whether the enhancement was included; it assumed for purposes of sentencing that the enhancement did not apply. (*See id.* at 76-77.) By judgment dated November 5, 2018, Movant was sentenced to 480 months' imprisonment, to be followed by a four-year term

---

[4] The addendum corrected a date of a drug transaction for which Movant was accountable; it did not change the drug quantity attributed to him, however. (*See* doc. 570-a at 4-5.)

of supervised release. (*See* doc. 836.)

On appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on November 20, 2019. *See United States v. Valdez-Villalobos*, 785 F. App'x 239 (5th Cir. 2019). Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.    Substantive Claims**

Movant asserts the following grounds for relief:

(1) [Movant] was denied Effective Counsel during the Plea Stage;

(2) [Movant's] Plea Was Involuntary, unknowing and violation of due process;

(3) [Movant] Was denied Effective Counsel During Sentencing; and

(4) [Movant] Was denied Effective Counsel on Appeal.

(No. 3:20-CV-3476-D-BH, doc. 5 at 4-8.)[5] The Government filed a response on February 5, 2021. (*See id.*, doc. 9.) Movant filed a reply on November 16, 2021. (*See id.*, doc. 15.)

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

---

[5] Because resolution of some grounds for relief may impact some of the remaining claims, they are considered in an order different than presented by Movant.

Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    PROSECUTORIAL MISCONDUCT

In his second ground relating to the voluntariness of his guilty plea, Movant contends that the Government "exploited the loop hole [sic] created by the Sentencing Reform Act of 1984" and "drafted a misleading plea agreement and presented it too [sic] Movant." (No. 3:20-CV-3476-D-BH, doc. 3 at 24.) He argues that the "plea agreement at best consituted [sic] fraud in the factum and/or the government breached the terms of the plea [agreement]." (*Id.*; *see also id.*, doc. 3 at 8.) He claims that the plea agreement "constitutes fraud in the factum" because "it unambigously [sic] stated a Mixture of Meth" and "[t]hus, Movant had an understanding that he was being held accountable for a Mixture of Meth." (*Id.*, doc. 3 at 26; *see also id.*, doc. 15 at 2-3, 6-10.) He also argues that as an "alternative to fraud, the Government beached the plea agreement reasonable [sic] understood by Movant" because "[t]he drafting of the plea document would give Movant a reasonable understanding that he was being allowed to plead guilty to a Lesser offense of a Mixture of Meth." (*Id.*, doc. 3 at 28; *see also id.*, doc. 3 at 3; doc. 15 at 7, 10.) According to Movant, "therefore, the Guideline range would be align [sic] with the guideline range thereto." (*Id.*, doc. 3 at 28; *see also id.*, doc. 3 at 3.)

"As the Supreme Court has made clear, 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *United States v. Purser*, 747 F.3d 284, 290 (5th Cir. 2014) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). When considering whether the Government violated a plea agreement, courts apply general principles of contract law and consider "'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.'" *United States v. Lewis*, 476 F.3d 369, 387-88 (5th Cir. 2007) (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)). The movant bears the burden of demonstrating a violation of the agreement by a preponderance of the evidence. *Id*. at 387.

Here, Movant was charged in Count Two of the indictment with knowingly and intentionally conspiring with others to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of §§ 846, 841(a)(1) & (b)(1)(B). (*See* doc. 239 at 4.) He pled guilty to Count Two as charged. (*See* docs. 337, 392.) The plea agreement contains no agreements or promises by the Government regarding the quantity or purity level of the controlled substances for which Movant would be held accountable for sentencing purposes, or how the sentencing guidelines would be applied to same to calculate his applicable guideline range.[6] (*See generally* doc. 337.) Rather, Movant acknowledged in the plea agreement that he understood and agreed that the sentence imposed was solely in the discretion of the Court after consideration of the advisory sentencing guidelines, no one could predict with certainty the outcome of the Court's consideration of the guidelines in his

---

[6] Under the sentencing guidelines, the offense level for an offense involving a mixture or substance containing a methamphetamine is "determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level." *United States v. Molina*, 469 F.3d 408, 414 (5th Cir. 2006).

case, the plea agreement was a complete statement of the parties' agreement and could not be modified unless done in writing and signed by all parties, and no guarantees or promises from anyone had been made as to what sentence the Court would impose. (*See id.* at 2, 4, 6.) He further swore in open court that no promise or assurance had been made to him to induce him to plead guilty other than what was in the plea agreement and supplement.  (*See* doc. 860 at 7-8.)

Even assuming for purposes of this motion only that the claims are not procedurally barred because they were not raised on direct appeal, the record shows no agreement between the parties that Movant's guideline sentencing range would be calculated based on any specific characterization of the controlled substances for which he was accountable. To the contrary, the plea agreement expressly recognized that no one could predict with certainty the outcome of the Court's consideration of the sentencing guidelines. It also expressly stated that Movant was pleading guilty to Count Two as charged in the indictment. To the extent Movant argues that he reasonably understood that the plea agreement charged him with a "lesser included offense," and stipulated how the methamphetamine quantities in the case would be computed under the sentencing guidelines, his understanding was not reasonable given the plain language of the plea documents regarding the guidelines, and his acknowledgements under oath before the Court. His claims that the Government prepared a fraudulent plea agreement, or in the alternative, breached the plea agreement, are unsupported by the record and without merit. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends that he "was denied Effective Counsel during the plea stage, sentencing

and on appeal." (No. 3:20-CV-3476-D-BH, doc. 3 at 6.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

10

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Lucey*, 469 U.S. at 396. Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the movant must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

## A.    *Cronic* **Standard**

In his § 2255 filings, Movant appears to argue that prejudice should be presumed on his claims of ineffective assistance of trial and appellate counsel under *United States v. Cronic*, 466 U.S. 648 (1984). (*See* No. 3:20-CV-3476-D-BH, doc. 3 at 20-22, 30-31, 36-37, 41; *see also id.*, doc. 15 at 4, 6-7.)

In *Cronic*, the Supreme Court recognized that a defendant might be constructively denied counsel even though an attorney had been appointed to represent him. "A constructive denial of

counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000) (internal quotation marks and citation omitted). Apart from a constitutional error of such magnitude that "'no amount of showing of want of prejudice would cure'" the error, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659 & n. 26. The presumed prejudice standard is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," such as (1) a "complete denial of counsel . . . at a critical stage" of the criminal proceedings; (2) a complete failure of counsel "to subject the prosecution's case to meaningful adversarial testing"; and (3) "circumstances [that] made it so unlikely that any lawyer could provide effective assistance." *Id.* at 658-59, 661; *accord Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Austin v. Davis*, 647 F. App'x 477, 490 (5th Cir. 2016). The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings; it applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell*, 535 U.S. at 696-97. A movant has the burden to show that he was constructively denied counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

Here, Movant's counsel advised him about pleading guilty, negotiated a plea agreement, made multiple objections to the PSR and addendum, filed two sentencing memoranda arguing for a lower sentence, cross-examined the Government's witness at the sentencing hearing, and presented arguments for a lower sentence at the sentencing hearing. (*See, e.g.*, docs. 337, 552, 615, 698, 831-32; doc. 861 at 5-6, 39-65, 69-72.) On appeal, appellate counsel filed a 40-page *Anders*

brief discussing the absence of any non-frivolous issue for appeal, Movant's appeal waiver, and the compliance of the PSR and sentencing with the Federal Rules of Criminal Procedure. *See Brief of Defendant-Appellant*, *Valdez-Villalobos*, 785 F. App'x 239 (No. 18-11451), 2019 WL 1762728. Movant has not shown a complete denial of trial or appellate counsel at any stage of the proceedings, a failure by counsel to test the Government's case, or that counsel failed to oppose the Government throughout the proceeding as a whole. *See Bell*, 535 U.S. at 696-97; *Thomas v. Davis*, 968 F.3d 352, 355-56 (5th Cir. 2020) (holding that *Cronic* did not apply even when counsel "acknowledged the strength of the prosecution's evidence and indicated that [the defendant] deserved a 'substantial sentence'" during closing arguments). To the extent he claims that *Cronic* applies based on his allegations regarding the Government's alleged actions in the plea proceedings, those claims are without merit, as discussed. Further, his conclusory and speculative allegations, including that "the government withheld critical information from Counsel as to the facts of the Case, drafted a fraudulent [sic] in the factum plea agreement, and then submitted reports to the probation office unreviewed by Movant's Counsel," are insufficient to carry his burden. (No. 3:20-CV-3476-D-BH, doc. 3 at 21); *see also Childress*, 103 F.3d at 1228, 1331-32; *Ross*, 694 F.2d at 1011. Movant has failed to demonstrate that he was constructively denied counsel such that the *Cronic* standard should apply. His ineffective assistance of counsel claims are properly analyzed under the *Strickland* standard.

## B.    Plea Proceedings

In his first ground, Movant contends that he "was Denied Effective Counsel during the plea stage contary [sic] to the Sixth Amendment to United States Constitution." (No. 3:20-CV-3476-D-BH, doc. 3 at 10; *see also id.*, doc. 5 at 4.) He claims that counsel "informed him that he was facing a statutory minimum of 5 years and a maximum of 40 years. But, that the Court would

consult the United States Guidelines and absent extraordinary circumstances the Court would impose a sentence between 87-and [sic] 108 months." (*Id.*, doc. 3 at 21; *see also id.*, doc. 3 at 11.) He argues that "Counsel's failure to correctly apply Sentencing Guidelines in advising [Movant] was prejudicial because [Movant] would have rejected plea had he known the length of sentence." (*Id.*, doc. 3 at 23.) According to him, had he "been appraised [sic] of the fact he faced the statutory maximum he would gained [sic] nothing from accepting the plea offer." (*Id.*)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)). "When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.* When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted). A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance. *See id.* at 437 (finding counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if convicted based on his misunderstanding of the guidelines, when he actually faced 70 to 87 months); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (stating that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide

his client with the information needed to make an informed decision about accepting a plea offer or going to trial[,]" and remanding for determination of whether a misrepresentation was actually made); *but see United States v. Alston*, No. 21-30090, 2023 WL 3843071, at *5 (5th Cir. June 6, 2023) (holding that counsel was not deficient under *Strickland* where he underestimated sentencing range based on belief that the movant would be sentenced "in accordance with an offense level based off of a methamphetamine mixture, rather than actual methamphetamine.").

Even assuming for purposes of this motion only that counsel rendered deficient performance in representing Movant's sentence exposure as alleged, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of resulting prejudice. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

the district court properly denies relief for lack of prejudice. *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, No. 3:04-CV-0413-D, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007).

Here, Movant was advised through the plea agreement, factual resume, and by the Court in person that by pleading guilty, he was subjecting himself to a statutory maximum period of imprisonment of 40 years on Count Two. (*See* doc. 336 at 1; doc. 337 at 2; doc. 860 at 10.) He was also advised through the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not binding, and neither counsel nor the Court would be able to determine the applicable guideline

range until after a PSR was completed and the parties had an opportunity to object to it. (*See* doc. 337 at 2; doc. 860 at 11-13.) He swore in open court that no promise or assurance had been made to him to induce him to plead guilty other than what was in the plea agreement and supplement, he understood his counsel's professional opinion concerning what the guideline range might be was not a guarantee or promise, and the Court alone would determine his sentence under the sentencing guidelines. (*See* doc. 860 at 7-8, 12-13.)

Regardless of what counsel told him about his likely sentence, Movant cannot show prejudice under *Strickland* because his plea documents and responses under oath to the Court's questioning show that he was clearly informed about and understood his maximum sentence exposure when he pled guilty under the plea agreement. Additionally, to the extent he alleges that he would not have pled guilty if not for counsel's alleged deficient advice on his sentence exposure, a court should not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *see also United States v. Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (holding that the movant "must substantiate any preference to proceed to trial—if he had been properly advised on the sentence he was facing— with 'contemporaneous evidence,' not post hoc assertions."). Movant provides only conclusory and *post hoc* allegations of prejudice, which are insufficient to show a reasonable probability that he would have rejected the plea agreement and insisted on proceeding to trial. Because Movant has failed to satisfy his burden under *Strickland*, the claim should be denied.

C.    **Sentencing Proceedings**

In his third ground, Movant claims he "was denied Effective Counsel During Sentencing."

(No. 3:20-CV-3476-D-BH, doc. 5 at 7; *see also id.*, doc. 3 at 10, 35.) He argues that "Counsel abandon [sic] any challenges to the disparity of a Mixture of Meth verus [sic] 'actual' Meth or any challenge to the application of such a disparity under the facts of the case." (No. 3:20-CV-3476-D-BH, doc. 3 at 35.) He also argues that "what objections Counsel did make he failed to adequately protect Movants [sic] interest by ensuring final rulings and a [sic] adjusted record." (*Id.*)

### 1. *Failure to Challenge Methamphetamine Computation*

Movant contends that counsel failed "To Challenge The Disparity Between A Mixture of Meth and 'Actual Meth' Under The USSG In General," and to "Make A Strenous [Sic] Objection That Under The FACTS of This Case the Meth Disparity Should not be Applied." (*Id.*, doc. 3 at 37, 39.) He argues that "there are substantial facts that would have supported an objection to the Application of the x 10 disparity: (1) a large Majority of the Meth Was 76% pure thus a Mixture at best[;] (2) it Was alledged [sic] that the Meth was liquified imported and converted back, thus Chemically impossible for it to be pure[;] and (3) Movant was fraudulently induced to plead guilty." (*Id.*, doc. 3 at 39.)

When, as here, "a defendant pleads guilty to an offense involving a mixture or substance containing methamphetamine, the 'offense level [is] determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level.'" *United States v. Alston*, 720 F. App'x 219, 219 (5th Cir. 2018) (quoting *Molina*, 469 F.3d at 414); *see also United States v. Hernandez-Alcantar*, No. 19-40505, 2023 WL 107524, at *1 (5th Cir. Jan. 4, 2023). ("'The choice of which [methamphetamine] multiplier to use is not determined by the language of the indictment.'"). Recognizing that the "choice of multiplier is determined by the Guidelines and not by the government or the language of the indictment," the Fifth Circuit has rejected the argument that application of the methamphetamine actual multiplier in the context of

a conviction for an offense involving a mixture or substance containing methamphetamine violates due process. *Molina*, 469 F.3d at 413-14. Under § 2D1.1 of the sentencing guidelines, an amount of "'Methamphetamine (actual)' refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance," and one gram of methamphetamine actual converts to 20 kilograms of marijuana equivalent. U.S.S.G. § 2D1.1(c), n.(B) & cmt. 8(D). "Methamphetamine" amounts under § 2D1.1 "refer[ ] to the entire weight of any mixture or substance containing a detectable amount" of methamphetamine, and one gram converts to 2 kilograms of marijuana equivalent. U.S.S.G. § 2D1.1(c), n.(A) & cmt. 8(D).

Here, the PSR stated that the underlying criminal investigation "revealed that the purity of the methamphetamine being distributed by [Movant] ranged in purity from 76.4 percent to 98 percent." (doc. 467-1 at ¶ 34.) Where purity testing was not available, in an abundance of caution, Movant was held accountable for methamphetamine quantities at the lowest tested purity level of 76.4%. (*See id.*) The information set forth in the PSR was obtained, supplemented, and verified through a meeting and interview with FBI special agents and a task force officer, as well as a review of FBI investigative materials. (*See id.* at ¶ 8.) In accordance with the notes to § 2D1.1(c), the PSR applied the methamphetamine actual and ice multiplier in calculating the marijuana equivalency of the methamphetamine quantities for which Movant was held accountable.[7] (*See id.* at ¶ 36.) The record therefore shows that the methamphetamine actual computation was proper under the sentencing guidelines and consistent with Fifth Circuit precedent, and Movant offers no rebuttal facts or evidence beyond conclusory statements to challenge the PSR's findings regarding

---

[7] Movant was also held accountable for methamphetamine ice quantities where a specific mixture or substance from the underlying investigation was determined to contain "d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c), n.(C); (*see also* doc. 467-1 at ¶ 35.) As with methamphetamine actual, one gram of ice is the marijuana equivalent of 20 kilograms. *See* U.S.S.G. § 2D1.1(c), cmt. 8(D). To the extent Movant's claim extends to the ice quantities, it fails for the same reasons discussed.

the quantities and purity levels of the methamphetamine attributed to him. To the extent he argues counsel should have objected to the computation based on the alleged fraudulent or breached plea agreement, as discussed, an objection would have been meritless. Movant therefore fails to show any meritorious ground on which counsel could have objected to the methamphetamine actual computation.[8] Because counsel is not deficient for failing to raise a meritless objection, Movant fails to satisfy the first *Strickland* prong. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

Because Movant has not identified a meritorious basis on which counsel should have objected to the methamphetamine actual computation, he also has failed to show *Strickland* prejudice, i.e., a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument. . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.") In the sentencing context, this requires a showing that the alleged deficiency of counsel created a reasonable probability that his sentence would have

---

[8] Movant alleges that "[a]ny competent reasonable Counsel would have objected and in the [sic] least sought independant [sic] testing of the substance." (No. 3:20-CV-3476-D-BH, doc. 3 at 39.) To the extent his allegation can be liberally construed to contend that counsel was ineffective for failing to independently test the methamphetamine at issue, the claim fails. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal that, "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). Movant offers no facts or evidence showing what independent testing of the methamphetamine quantities would have revealed and how it would have benefitted his case. He has not shown that counsel's performance was deficient or resulting prejudice under *Strickland*. To the extent considered, this conclusory claim should be denied.

been less harsh. *See, e.g., Glover v. United States*, 531 U.S. 198, 200. Movant has failed to satisfy

both *Strickland* prongs, and the claim should be denied.

### 2. *Failure to Obtain Rulings*

Movant contends that at sentencing, "Counsel object [sic] to drug amounts, but the Court

found even if it was removed it wouldn't matter. Likewise Counsel objected to the two point

enhance [sic] for the firearm which was sustained but the record never accordingly objected to and

corrected." (No. 3:20-CV-3476-D-BH, doc. 3 at 37.) He argues that "[a]lthough Movant's Counsel

did raise objections, the Court failed to make a final determination on the objections and make a

Correct record thereon." (*Id.*, doc. 3 at 36.)

Here, some of Movant's objections were found to not affect the guidelines or sentencing.

(*See* doc. 861 at 74.) The Court expressly overruled Movant's objections relating to the base

offense level, i.e., his challenges to the drug quantities attributed to him, and the importation, drug

premises, and organizer or leadership role enhancements. (*See id.* at 73-76.) The Court found it

need not decide Movant's objections relating to the dangerous weapon enhancement because

regardless of whether the enhancement was included, the total offense level would be unchanged

at 43. (*See id.* at 76.) For purposes of sentencing, the Court assumed that the dangerous weapon

enhancement did not apply. (*See id.* at 76-77.) Aside from conclusory allegations, Movant has not

shown or explained how counsel rendered deficient performance by not insisting on additional

rulings on his objections, all of which were addressed on the record at sentencing.

Even assuming for purposes of this motion only that counsel rendered deficient

performance by failing to seek additional rulings on his objections as alleged, Movant offers no

facts or evidence to show a reasonable probability that his sentence would have been less harsh

absent counsel's alleged deficiencies. His conclusory allegations of prejudice are insufficient to

carry his burden under *Strickland*. *See Miller*, 200 F.3d at 282. He therefore is not entitled to § 2255 relief on this claim, and it should be denied.

**D.** **Appeal Proceedings**

In his fourth ground, Movant contends that he "was denied Effective Counsel on Appeal." (No. 3:20-CV-3476-D-BH, doc. 5 at 8; *see also id.*, doc. 3 at 10, 40.) He argues that appellate counsel was ineffective "For not Raising a Challenge to the Guilty Plea due To the Government's Manipulation of the Plea Process[,]" and "For Withholding Movant's Record on Appeal." (*Id.*, doc. 3 at 40-41.) He claims he "instructed [appellate counsel] to challenge the guilty plea but [appellate counsel] refused and filed a [sic] 'Anders brief'"; he also "made substantial efforts to obtain the records of his case so he could adequately respond to the *Anders* brief [ ] [b]ut Counsel refused to assist" him. (*Id.*, doc. 3 at 3; *see also id.*, doc. 3 at 41.) Movant also appears to argue that appellate counsel was ineffective because "any reasonable Counsel would have pursued the Leadership role enhancement," and because he "abandon[ ] any challenge to the distinction between Meth and actual meth." (*Id.*, doc. 3 at 7, 40; *see also id.*, doc. 3 at 12.)

Movant's claims relating to the Government's alleged actions during the plea proceedings are without merit, as discussed. Further, aside from conclusory allegations, he has failed to identify or explain any "[s]olid, meritorious arguments based on directly controlling precedent" that should or could have been raised on appeal had appellate counsel provided Movant with case records or relating to the leadership role enhancement.[9] *Williamson*, 183 F.3d at 463. Because appellate counsel is not deficient for failing to raise a meritless argument on appeal, and conclusory

---

[9] Movant also mentions that appellate counsel "abandon [sic] . . .application of firearm [sic]." (No. 3:20-CV-3476-D-BH, doc. 3 at 12.) As discussed, the Court assumed for purposes of sentencing that the two-level dangerous weapon enhancement did not apply. (*See* doc. 861 at 76-77.) Movant does not otherwise address this argument in his filings. Because he has failed to allege or identify any meritorious argument which appellate counsel should or could have raised in connection with this enhancement, he fails to show deficient performance and resulting prejudice under *Strickland*. To the extent the § 2255 filings can be liberally construed to allege an independent claim of ineffective assistance of appellate counsel relating to the dangerous weapon enhancement, his conclusory claim should be denied.

allegations are insufficient to warrant § 2255 relief, Movant fails to satisfy the first prong of *Strickland*. *See Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal); *Miller*, 200 F.3d at 282. He also has not shown a reasonable probability of success on appeal absent appellate counsel's alleged deficiencies, and he therefore fails to demonstrate *Strickland* prejudice. *See Briseno*, 274 F.3d at 207. Movant is not entitled to § 2255 relief on these claims, and they should be denied.

## V.    INVOLUNTARINESS OF PLEA

In his second ground, Movant contends that his "Plea Was Involuntary, unknowing and violation of due process" based on the ineffective assistance of counsel and the Government's alleged actions during the plea proceedings. (No. 3:20-CV-3476-D-BH, doc. 5 at 5; *see also id.*, doc. 3 at 10, 24-34.) He argues that the Government's alleged conduct resulted in him "admit[ting] guilt to a crime for which he did not agree to or knowingly admit." (*Id.*, doc. 3 at 28.) He appears to argue that a criminal defendant is entitled to be advised about what the applicable guideline range is before he can voluntary and intelligent guilty plea. (*See id.*, doc. 3 at 19, 33.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge

against him, the first and most universally recognized requirement of due process." *Bousley*, 523

U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks

omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant

understood the nature and substance of the charges against him, and not necessarily whether he

understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there

needs to be an affirmative showing that the decision to plead guilty was voluntarily and

intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the

Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea

of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as

well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The

very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may

not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at

78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences

of his guilty plea does not require a trial court to determine that the defendant has a perfect

understanding of the consequences, however. The court must only ascertain whether the defendant

has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625,

627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic

understanding of the consequences of a guilty plea"). Compliance with the admonishments

required under Rule 11 "provides prophylactic protection for the constitutional rights involved in

the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances

surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397

U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

As discussed, Movant's plea documents, the Court's questioning at his re-arraignment, and his responses under oath demonstrate that at the time he pled guilty, he knew that he was subject to a maximum term of 40 years' imprisonment on Count Two, no one could predict with certainty the outcome of the Court's consideration of the sentencing guidelines, his counsel's professional opinion concerning what the guideline range might be was not a guarantee or promise, no promise or assurance had been made to him to induce him to plead guilty outside of those in the plea documents, his advisory guideline range would not be determined until after a PSR was prepared and the parties had an opportunity to object to it, and the Court alone would decide his sentence. (*See* doc. 336 at 1; doc. 337 at 2; doc. 860 at 7-8, 10-13.) With this knowledge, he went forward with his guilty plea.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a

24

signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. His assertions that he had to be informed of the applicable guidelines range in his case in order for his guilty plea to be knowing and voluntary are without merit; to the extent his claims rely on the merits of his claims challenging the Government's alleged actions during the plea proceedings or his claims of ineffective assistance of counsel, Movant has failed to show that he is entitled to relief on those grounds for the reasons discussed. *See, e.g.*, *Flores v. Cockrell*, No. SA-98-CA-1169OG, 2003 WL 1957131, at *15 & n.105 (W.D. Tex. Mar. 21, 2003) ("The Constitution does not require that a criminal defendant be informed, prior to the acceptance of a guilty plea, of either what his or her specific sentence will be or the specific manner in which the trial court will calculate the defendant's sentence.") (citing cases). He has not shown that his guilty plea on Count Two was unknowing or involuntary. He is not entitled to § 2255 relief on this claim.

## VI.    CUMULATIVE ERROR

Movant also appears to allege that he is entitled to § 2255 relief "under the totality of the circumstance [sic], and cumulative infringement on substantial rights[.]" (No. 3:20-CV-3476-D-BH, doc. 3 at 24; *see also id.*, doc. 3 at 31-34.) His allegations are liberally construed as a ground for relief based on cumulative error.

The Fifth Circuit has recognized that "'[u]nder the cumulative error doctrine, relief may be

obtained only when constitutional errors so fatally infect the trial that they violate the trial's fundamental fairness.'" *United States v. Fields*, 761 F.3d 443, 483 (5th Cir. 2014) (quoting *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009)). Because Movant fails to establish that the Government committed fraud or breached the plea agreement, or that his counsel was constitutionally ineffective under *Strickland* on any of his claims of ineffective assistance of counsel, he has not demonstrated any constitutional errors that may be considered cumulatively. *See, e.g., Tovar v. United States*, No. 3:18-CV-528-B (BT), 2019 WL 7762200, at *7 (N.D. Tex. Dec. 26, 2019) (finding that the movant was not entitled to § 2255 relief on cumulative error claim where he failed to establish ineffective assistance of counsel under *Strickland*), *rec. adopted*, 2020 WL 470270 (N.D. Tex. Jan. 29, 2020). Movant's claim of cumulative error entitles him to no relief under § 2255 and should be denied.

## VII.    EVIDENTIARY HEARING

Movant requests an evidentiary hearing on his claims. (*See* No. 3:20-CV-3476-D-BH, doc. 15 at 6-10.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2.

Here, Movant has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. He has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VIII.  RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on December 7, 2020 (doc. 5), should be **DENIED** with prejudice.

**SIGNED this 3rd day of October, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE